UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

PAMELA CURTIN on behalf of
Brian C. Sheil,

                          Plaintiff,

    -against-                                      3:10-CV-1401 (LEK/DRH)

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL
SECURITY,

                          Defendant.

## DECISION and ORDER

**I.    INTRODUCTION**

Presently before the Court are two Motions for judgment on the pleadings, filed by Pamela Curtin ("Plaintiff") on behalf of Brian C. Sheil on July 18, 2011 and by Defendant Jo Anne B. Barnhart, Commissioner of Social Security on November 29, 2011. Dkt. Nos. 9 ("Plaintiff's Brief"), 16 ("Defendant's Brief"). Plaintiff is appealing the unfavorable decision made by Administrative Law Judge ("ALJ") Carl E. Stephan, denying her application for Supplemental Security Income ("SSI"). Dkt. No. 1 ("Complaint") at 51. For the reasons stated below, ALJ Stephan's decision is affirmed.

**II.    BACKGROUND**

This action began with an administrative hearing on September 13, 2000, after Pamela Curtin, mother and trustee of Claimant Brian Sheil ("Claimant"), was initially denied SSI for her son. Id. at 13. Plaintiff had created a special needs trust ("Trust") in 1998 worth approximately $500,000, left

from Plaintiff's deceased father, which dispersed approximately $4,000 per month. Def.'s Br. at 3.[1]
Plaintiff used this money to pay for Claimant's transportation and stay at a residential medical treatment facility ("Berkeley Oaks") at McLean Hospital from March 20, 1996 until September 5, 2000. Id. Pursuant to a hearing, Administrative Law Judge ("ALJ") Robert Wright issued a favorable decision for Plaintiff, and Claimant was granted SSI. Id. However, on May 2, 2001, the Appeals Council, on its own motion, reviewed and subsequently vacated the decision. Id. at 18. The Council rendered a new decision unfavorable to Plaintiff. Id.

Plaintiff then appealed to United States District Court for the Northern District of New York. Id. at 37. On September 10, 2004, the District Court vacated the Appeals Council's decision and remanded for another hearing on the grounds that the record lacked substantial evidence to determine in what capacity Claimant was residing at Berkeley Oaks. Id. On December 28, 2005, ALJ Carl E. Stephan issued a decision in Plaintiff's favor. Id. at 26 The Appeals Council again vacated and remanded the decision, instructing ALJ Stephan to investigate the case further. Id. at 51. Based on new evidence, ALJ Stephan issued a second decision unfavorable to Plaintiff on November 19, 2007. Id. Plaintiff now appeals to the Court.

### III. STANDARD OF REVIEW

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is eligible for SSI. See 42 U.S.C. §§ 405(g), 1383(c)(3). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was

---

[1] All page numbers refer to the printed numbers at the bottom of each page rather than the electronically inserted numbers at the top of each page.

not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). In deciding whether the Commissioner's decision is supported by substantial evidence, the Court defers to the Commissioner's resolution of conflicting evidence. Clark v. Commissioner of Social Security, 143 F.3d 115, 118 (2d Cir. 1998). If substantial evidence in the record supports the Commissioner's factual findings, they are conclusive and must be upheld. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citing 42 U.S.C. § 405(g)).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, the Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

**IV.    DISCUSSION**

A United States citizen is eligible for SSI if that citizen is disabled and does not have more income or resources than is permitted. 20 C.F.R. § 416.202. At issue is whether Plaintiff's Trust disbursements used to pay for Claimant's stay at Berkeley Oaks constituted income that would bar him from SSI eligibility.

For the purposes of SSI, "income" is defined as "anything you receive in cash or in kind that you can use to meet your needs for food and shelter." 20 C.F.R. § 416.1102. "Some things you receive are not income because you cannot use them as food or shelter, or use them to obtain food or shelter." 20 C.F.R. § 416.1103. Among the listed items that are *not* considered income are, in relevant part, medical care and services that include "[r]oom and board you receive during a medical confinement." 20 C.F.R. § 416.1103(a)(2). In making his determination, ALJ Stephan reviewed the Social Security Administration ("SSA") procedure for determining what constitutes medical confinement:

> Consider the individual's stay to be for a medical confinement when the individual is an inpatient in an institution, or that part of an institution which is licensed or otherwise approved by a Federal, State, or local government to provide medical services and the individual is in the institution for the primary purpose of receiving medical services.

(SSA POMS SI 00520.400.)

The two leading cases on distinguishing a group home setting from a medical facility are Lapin v. Mathews, 422 F. Supp. 1089 (D.D.C. 1976) and Slavin v. Sec'y of Dept.of Health, Ed. & Welfare, 486 F. Supp. 204 (S.D.N.Y. 1980). Both Lapin and Slavin require courts to ascertain whether a disabled person was residing at a treatment facility in a medical confinement capacity or an assisted living capacity for the purpose of determining SSI eligibility. Lapin v. Mathews, 422 F. Supp at 1091. While a medical facility may provide some incidental, assisted living

4

services, the disabled person's *main* purpose at the facility must be medical in order to exempt a claimant's expenses from income calculations. Slavin v. Sec'y of Dept.of Health, Ed. & Welfare, 486 F. Supp. 204, 207. Among the factors considered to make this determination are whether there are full time physicians on staff at the facility, whether the residents are billed separately for medical treatment and room and board costs, and what level of medical training is required for supervisory employees. Lapin v. Mathews, 422 F. Supp at 1091-92.

Determining the capacity of Claimant's stay at Berkeley Oaks has been a challenge because it no longer exists under the same name and is presently a different facility than it was when Claimant was a resident. Dkt. No. 1-7 ("ALJ Decision") at 6. However, in diligently investigating the capacity of Claimant's residence, ALJ Stephan was able to acquire a detailed evaluation of the approximate value of daily medical and residential services Claimant received from Mary Gormley, a former employee who worked in a management capacity while Sheil was a resident. Id. Ms. Gormley stated that of Claimant's daily facility charge of $110, approximately $47.87 was allocated to medical treatment and monitoring costs, and $63.13 was allocated to food, clothing, and shelter costs. Id.

This assessment supports ALJ Stephan's finding that the majority of the trust money being used to pay for Claimant's stay at Berkeley Oaks *was* going towards food, shelter, and clothing and consequently should be regarded as countable income for the purposes of SSI eligibility. This finding is also supported by the Lapin and Slavin factors. There was not a full time physician on staff, and medical treatment bills including doctor visits, medication, and psychiatrist visits were paid for separately by insurance and not as part of the $110 per day charge. Id. at 6-7. The percentage of the daily charge that was allocated to Claimant's "medical treatment" primarily paid for non-psychiatric

counseling and monitoring. Id. These details severely weaken the contention that Claimant's stay could be regarded as medical confinement.

Further, a form SSA 8045, which verifies that a facility is in fact a medical treatment facility within the meaning of the relevant social security rules, was never filed for Berkeley Oaks. Id. at 6. While the absence of this filing is not dispositive, it further counsels against a finding that Berkeley Oaks was a medical treatment facility.

Accordingly, the Court finds that the Commissioner's decision was supported by substantial evidence and should be upheld.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED**, that Administrative Law Judge Stephan's November 2007 decision (Dkt. No. 1 at 40) is **AFFIRMED**; and it is further

**ORDERED**, that the Clerk shall serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

DATED: September 27, 2012
Albany, New York

Lawrence E. Kahn
U.S. District Judge